```
 1                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
 2                 Civil No. 11-6377(JLL)


 3
         - - - - - - - - - - - - - - -X
 4                                    :
       SHARON L. DANQUAH, et al.,     :      TRANSCRIPT OF
 5                                    :       PROCEEDINGS
                Plaintiffs,           :
 6                                    :      December 22, 2011
                -vs-                  :
 7                                    :
       UNIVERSITY OF MEDICINE AND     :
 8     DENTISTRY OF NEW JERSEY (UMDNJ):
       et al.,                        :
 9                                    :
                Defendants.           :      Newark, New Jersey
10                                    :
         - - - - - - - - - - - - - - -X
11

12

13

14

15     B E F O R E:

16            THE HONORABLE JOSE L. LINARES,
           UNITED STATES DISTRICT COURT JUDGE
17

18

19

20
          Pursuant to Section 753 Title 28 United States Code, the
21     following transcript is certified to be an accurate record
       as taken stenographically in the above-entitled proceedings.
22
       s/Phyllis T. Lewis, CCR, CRCR
23     - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
               PHYLLIS T. LEWIS, C.C.R., C.R.C.R.
24     Official Court Reporter - United States District Court
            P.O. Box 25588, Newark, New Jersey  07101
25                    (732) 735-4522
```

PHYLLIS T. LEWIS, CSR, CRR, OFFICIAL COURT REPORTER

```
1        A P P E A R A N C E S:

2                    DEMETRIOS K. STRATIS, ESQUIRE
                     10-04 River Road
3                    Fair Lawn, New Jersey 07410
                        -and-
4                    ALLIANCE DEFENSE FUND
                     801 G Street NW (Suite 509)
5                    Washington, DC 20001
                     BY:  MATTHEW S. BOWMAN, ESQ.
6                         CATHERINE GLENN FOSTER, ESQ.
                          STEVEN H. ADEN, ESQ.
7                    Attorneys for Plaintiffs.

8

9                    MC ELROY, DEUTSCH,
                     MULVANEY & CARPENTER, LLP
10                   1300 Mount Kemble Avenue
                     Morristown, New Jersey 07962
11                   BY:  EDWARD B. DEUTSCH, ESQ.
                          JOHN PEIRANO, ESQ.
12                        JAMES E. PATTERSON, ESQ.
                     Attorneys for Defendants.
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    THE CLERK:  All rise.

2                    THE COURT:  Thank you.

3                    Please be seated.

4                    Good afternoon.

5                    I want to put a little bit of a procedural

6     background on the record, but first let's get everyone's

7     appearance on the record.

8                    This is in the matter of Danquah versus University

9     of Medicine and Dentistry of New Jersey, Civil Action No.

10    11-6377.

11                   Counsel, your appearances for the record, please.

12                   MR. STRATIS:  Good afternoon, your Honor.

13                   Demetrios Stratis on behalf of the plaintiffs.

14                   Seated to my right is Matthew Bowman, who is

15    admitted in this matter pro hac vice.  Also seated to my

16    right is Catherine Foster, who has also been admitted last

17    week by Judge Hammer's order, and also part of our

18    litigation team is Steve Aden.

19                   THE COURT:  Good afternoon.

20                   Thank you.

21                   MR. DEUTSCH:  May it please the Court, Edward

22    Deutsch from Mc Elroy, Deutsch, Mulvaney & Carpenter, John

23    Peirano from the same firm, and James Patterson from the

24    same firm.

25                   THE COURT:  Good afternoon, gentlemen.
```

1              By way of background, the plaintiffs filed a

2      complaint in this matter back on October 31st, 2011.   In

3      that complaint it alleged three causes of action, a

4      violation of the church amendment and Section 1983, a

5      violation of the 14th Amendment of the United States

6      Constitution, and a violation of the New Jersey law, the

7      conscience statute.   They also filed an application for a

8      temporary restraining order, as well as a preliminary

9      injunction.

10             As a result of certain communications from the

11     defendants' counsel with regard to what the hospital was

12     willing to do in the interim and based on the

13     representations made therein, I issued a temporary

14     restraining order, and I scheduled this matter for a hearing

15     today.   Originally the hearing was scheduled for another

16     date, but then it was adjourned until today.   I think the

17     initial return date was back on November 18th.

18             We were here today ready to proceed to the

19     arguments in this matter, but I thought it would be in

20     everyone's best interest, both of the plaintiff nurses, as

21     well as the hospital, that I have a conversation with

22     counsel in an attempt to reach an amicable resolution that

23     would address both the concerns of the plaintiffs as well as

24     the concerns of the hospital.

25             The Court is well aware and cognizant of the

1    plaintiffs' religious beliefs and how strongly they feel

2    about this case and is equally aware of the concerns of the

3    hospital, the mission of the hospital of providing

4    appropriate medical care and the desire to keep providing

5    adequate medical care to our community, so both things had

6    to be balanced.  I thought it best before I had to make a

7    decision that forced me to make a ruling one way or the

8    other, that I would try to accommodate that the best I could

9    through engaging the parties in a dialog.

10          After a lengthy dialog, and I must say through a

11   lot of cooperation from the hospital and plaintiffs'

12   counsel, I think we have reached a situation where an

13   agreement has been arrived at.  Because of the how important

14   this matter is to the parties, we are going to memorialize

15   the agreement on the record today, and I am going to retain

16   jurisdiction of this matter to ensure that the terms of the

17   agreement are in fact followed.

18          Now, having said that, as I understand it, and I am

19   going to have -- Mr. Deutsch, is it going to be you who is

20   going to speak on behalf of the hospital?

21          MR. DEUTSCH:  Yes, your Honor.

22          THE COURT:  As I understand it, in an effort to

23   amicably resolve this matter, the hospital is willing to --

24   and, Mr. Bowman, I will give you an opportunity as well --

25          MR. BOWMAN:  Okay.

```
1              THE COURT:  -- is willing to allow the plaintiff
2      nurses to stay in the same day surgery unit and not have to
3      assist in any manner, and I am going to let you set forth
4      what that means, in termination of pregnancy cases, with the
5      exception of emergency situations, where it is a true
6      emergency, and where there is no non-objecting medical
7      personnel present when the emergency occurs, and even under
8      those circumstances, the only involvement of the objecting
9      plaintiffs would be to care for the patient until such time
10     as a non-objecting person can get there to take over the
11     care.
12              I thought that with that caveat, Mr. Bowman, and by
13     that I mean the fact if there is a non-objecting person
14     there, they have to do it, not your clients, and with the
15     caveat that they only have to do it until such time as a
16     non-objecting person gets there, and with the caveat that I
17     am retaining jurisdiction to ameliorate any concerns you
18     might have about what is not an emergency, that that was an
19     appropriate resolution.
20              I know that the plaintiffs had some concerns with
21     the issue of emergencies, you know, what exactly does that
22     mean, and how that could be used.
23              I am convinced, and I am going to have Mr. Deutch
24     make certain representations on the record, but I am
25     convinced from the dialogue with both counsel, that it is
```

1    not the intent or the desire of the hospital to use this
2    agreement in any way as a pretext to then come up with some
3    kind of a non-emergency situation, call it an emergency, and
4    have your clients have to get involved in the termination of
5    pregnancy at some level.
6            Having said that, in any event, I am retaining
7    jurisdiction in the event that you feel that that has truly
8    happened.
9            What I am not going to do today, and I have said
10   that to you, Mr. Bowman, and I think I said it to Mr.
11   Deutsch as well, is to try to come up with a definition of
12   all emergencies today or at any time, because I think that
13   would be medically impossible.  Emergencies come in many
14   shapes and forms.  You know, it could be a cardiac arrest
15   situation, or it could be a cerebral hemorrhage.  You could
16   have someone fall off of a chair and break a leg.  I can't
17   even imagine, as I sit here today, how many I could name, so
18   it would really be impossible.
19           It is also understood, as I view it from the
20   agreement of the parties, that the mere act of bleeding at
21   some level doesn't necessarily constitute an emergency.  It
22   is obvious to this Court that when a pregnancy is being
23   terminated in the manner in which the papers indicate the
24   procedure is done, there is to be expected some level of
25   bleeding at some point, and not every bleeding constitutes

1      an emergency.  However, I could see situations where it

2      could be, but that is an issue for another day.  That is my

3      general understanding of what the agreement is.

4              I am now going to have Mr. Deutsch set forth on the

5      record whether or not what I just said accurately

6      encompasses the agreement and what the hospital is willing

7      to do, and I want you to address the issue of staffing and

8      anything else that you want to put on the record with regard

9      to the potential pretextural emergencies and all of that,

10     understanding that I am going to retain jurisdiction to make

11     sure that the settlement hopefully gets carried forward as

12     intended by the parties.

13             MR. DEUTSCH:  Your Honor, may I have one moment,

14     please?

15             THE COURT:  You may.

16             (Counsel Confer)

17             MR. DEUTSCH:  Thank you, your Honor.

18             I think you have very adequately set forth the

19     agreement between the parties, between the hospital and Mr.

20     Bowman's clients.

21             I represent to the Court that the hospital has no

22     present -- no intention of using this agreement in any

23     pretextural manner.  They hired four additional nurses who

24     are non-objecting, as I understand it, to help the

25     situation, where the plaintiffs in this case do not have to

1    undertake any activities from checking people in, to taking

2    vital signs, administering medication, or any other normal

3    procedure relative to termination of pregnancy patients.

4         Your statement relative to emergencies is accurate.

5    I think reasonable people in the medical profession will

6    know what a real emergency is and will act accordingly.

7         The procedures take place, as I understand it, on

8    Wednesdays and Fridays, and that the hospital is going to

9    make its best efforts to have non-objecting people

10    available, so that the non-availability issue can be as moot

11    as it possibly can.

12         THE COURT:  All right.

13         Mr. Bowman, did I accurately --

14         MR. DEUTSCH:  I'm sorry, your Honor.

15         The other issue, your Honor, that we spoke of is

16    that you are correct, the intention is to keep these

17    plaintiffs in the same day surgery.  In the future if there

18    is any reason for movement, the hospital will abide by the

19    letter in applying the union contract, that they are bound

20    by it.

21         THE COURT:  Mr. Bowman, did I accurately reflect

22    the spirit and the letter of the agreement?

23         MR. BOWMAN:  Your Honor, I had a couple of notes on

24    that.  I think that what you said is generally my

25    understanding as well.

```
 1              Our understanding is -- well, just at the outset,
 2    my clients have never taken the position that if they are
 3    walking by a room and a woman is in an emergent situation,
 4    that they are not going to take the necessary action to
 5    protect her.
 6              The question is:  On routine abortion cases, do
 7    they have to do duties.
 8              That has always been the issue in the case.
 9              Our understanding is that the agreement that we
10    have come to today includes that the hospital would staff
11    the abortion cases with willing nurses, that -- so, in other
12    words, the hospital couldn't just say, "Well, we don't have
13    enough staff today, so you are on the case, because it is
14    emergency, we need staff," so that they would staff the
15    cases.
16              At the same time they wouldn't transfer, not only
17    transfer out my clients, but reduce their hours and say,
18    "Well, because we hired these new nurses, now we have too
19    many, and you can't work as many hours a week as you have
20    been.  We are going, you know, to change your duties and
21    schedule," and all of these things that are adverse that
22    we've proposed.
23              Part of the agreement is that as a result of my
24    clients being not willing to work on abortion cases, that
25    they are not going to suffer any of these adverse penalties.
```

           1                  THE COURT:  Well, I think that the important words

           2       there were that as a result of this case.  I am not going to

           3       today make a blanket ruling on how the hospital is going to

           4       run its personnel issues for years to come.  I mean, your

           5       clients are part of a collective bargaining agreement, and

           6       they have rights reserved within that collective bargaining

           7       agreement.  Obviously, if there is evidence that they are

           8       being somehow castigated in some form for having filing the

           9       lawsuit, that is a story for a different day.

          10                  But you are correct, my understanding, Mr. Deutsch,

          11       is that they will be allowed to stay, at least the present

          12       plan is that they will be allowed to stay as they were in

          13       the same day surgery unit with the only change really being

          14       that they don't have to participate in the termination of

          15       pregnancies at any level.

          16                  Is that correct?

          17                  MR. DEUTSCH:  The present intention is to keep them

          18       in same day surgery, but in the future at some point, if

          19       things change, and staffing had to be changed years from

          20       now, sometime in the future, it would be done in accordance

          21       with the collective bargaining agreement.

          22                  I can't say that they will be in same day surgery

          23       for the next 20 years.  It just can't happen --

          24                  THE COURT:  Mr. Bowman, it would be impossible for

          25       me to police that.

1              Now, the other concern, though, that Mr. Bowman

2    raised, and I think you said this, but I just wanted to

3    clarify it, you are going to staff the days when these

4    terminations of pregnancy are done with non-objecting

5    people, so that it is not the case that only objecting

6    people are there, and then by definition everything is an

7    emergency.

8              MR. DEUTSCH:  I think the best way to say it is

9    that the hospital is going to make the best efforts to have,

10   as Mr. Bowman said, the willing people or the non-objecting

11   people, the new hires and the remaining people who are not

12   objecting, best efforts to have those people available on

13   the days that these procedures take place to avoid the issue

14   of non-availability.

15             THE COURT:  All right.

16             Anything else?

17             MR. BOWMAN:  Yes.

18             And, your Honor, I think that that -- the point I

19   was making previously was so that we are in sort of a

20   different position than we were last week when Mr. Peirano

21   said that, well, once we put these four extra nurses in,

22   we have a surplus --

23             THE COURT:  That is not what is being said today.

24   That has changed as a result of frankly my input with Mr.

25   Deutsch and his input to his client and the conversations

1    that went back and forth with the hospital.  They have

2    changed I think their position to the position that I

3    suggested this morning, and I think you had accepted it.

4            MR. BOWMAN:  I just wanted to put it on the record,

5    your Honor, to clarify that.

6            I think that your description of the emergency

7    issue is basically consistent with ours.  Medical

8    professionals do know what a real emergency is.  My clients

9    are medical professionals, and the issue here is not I am

10   going to do emergency abortions.  There are no emergency

11   abortions in the outpatient surgery unit.  The issue is I'm

12   walking by, there's nobody else available, and this woman is

13   in need for, you know, whatever reason, it is a real

14   emergency.  My clients have never taken the position that I

15   am not going to help the women.

16           The real question was:  Are you going to be

17   assigned to work on abortion cases, you are expected to work

18   on abortion cases, and I think --

19           THE COURT:  We have taken care of that with this

20   agreement.

21           MR. BOWMAN:  -- and with that, I think that we

22   have -- I think we could have the understanding here, unless

23   I stand corrected --

24           THE COURT:  No.  I don't have anything else.

25           What I am going to do is, and I think for your

1       clients' protection, as well as the protection of the

2       hospital, so everyone is on the same page, as I said to both

3       of you in my chambers, rather than have you go back and

4       forth negotiating something in writing, especially because

5       the emotions in this case have run so high, I am going to

6       issue an order of settlement, which embodies the

7       understanding of the parties, as I have just recited it.

8               I am going to indicate in there that the staffing

9       concerns, as indicated by counsel, that they are going to

10      have someone there.

11              I am going to indicate in there that the word

12      "emergencies," as understood in the agreement, are true

13      medical emergencies, and it is not going to be used as a

14      pretext.

15              I am going to include in there that even in that

16      situation, your clients only have to get involved in it in

17      the absence of the non-objecting people, and then only until

18      they show up.

19              I will keep jurisdiction, so in the event that that

20      were to happen, or that your clients breached the agreement,

21      or the hospital breached the agreement, that you then can

22      come back to me and resolve it.

23              I think under the circumstances this is the best

24      solution for everybody, and I want to thank both you and Mr.

25      Deutch who are the ones that I dealt with.  I am sure

1    everybody else contributed.

2         By the way, I guess you should put on the record,

3    because you do have 12 clients, that you have the authority

4    to enter into this agreement on behalf of all of your

5    clients.  I know that only two or three are here, and then

6    you had to go to the hospital to meet with the rest of them

7    at my request, so could you please indicate for the record

8    that you have the authority to enter into this agreement on

9    behalf of all of your clients?

10        MR. BOWMAN:  Your Honor, I have spoken to each of

11   the 12.  As our understanding is represented here, they have

12   agreed to that.

13        We have a lot of details in the agreement, and I

14   don't mean to belabor the point, but I think it also -- I am

15   not sure if in your most recent recital of what it would

16   include, it included that there wouldn't be adverse actions

17   taken against my clients on the basis of their objection, or

18   that they wouldn't have their hours reduced and whatnot,

19   with the recognition that this is not, you know, locking the

20   hospital into what the same day surgery is going to be for

21   the next 20 years.  It's just a question of looking at the

22   staffing, as we discussed it, and we are in a different

23   position than we were last week, that that is also part of

24   it.

25        When Mr. Deutch recited some of the things, among

1    all of the things that would not be required of working on

2    cases, one thing that we did mention specifically was

3    training to do any thereof, so in other words, the things

4    that my clients wouldn't have to do on abortion cases, it is

5    my understanding that by virtue of the fact, they wouldn't

6    also have to go through training to do those things, and I

7    wanted to put that on the record.

8              Certainly, if I am incorrect about that, maybe you

9    can clarify it.

10             THE COURT:  This is the day to clarify it.

11             MR. DEUTSCH:  One second, your Honor.

12             (Counsel confer)

13             MR. BOWMAN:  But I can say, if I didn't more

14    specifically say it, that I have spoken with all 12 of my

15    clients, and they all do agree with the agreement to the

16    extent that I'm expressing our understanding of it.

17             THE COURT:  Thank you.

18             MR. PEIRANO:  Your Honor, may I respond on behalf

19    of UMDNJ?

20             THE COURT:  Yes.

21             MR. PEIRANO:  Your Honor, with respect to the

22    training, the training to actually perform abortions,

23    obviously they do not have to do that.  However, the duties

24    that they are being relieved from include duties that are

25    performed on other pre-op surgery patients and other post-op

```
 1      surgery patients.  So to the extent that that training is
 2      for all nurses without regard to whether it is abortions or
 3      not, if the hospital mandates that there be training for
 4      that, we are not saying that they wouldn't have to go
 5      through that training, Judge, for example, training on how
 6      to take vital signs.  I mean, you have to take vital signs
 7      for every surgery.  If they run training on that, they would
 8      be required to do that, Judge.
 9              THE COURT:  Training that is necessary for other
10      medical procedures.
11              MR. PEIRANO:  For all surgical -- that's absolutely
12      correct, your Honor.
13              THE COURT:  Mr. Bowman, I assume you have no
14      objection to that.
15              MR. BOWMAN:  That's right.  We weren't suggesting
16      that they wouldn't have to do the duties in themselves --
17              THE COURT:  The duties of a nurse in general, but
18      not specific duties dealing with termination of pregnancy,
19      right?
20              MR. BOWMAN:  Yes.
21              The way the training happened before was, we are
22      actually taking you to an abortion patient, and here, do
23      this, do that and the other thing.
24              No one -- you know, we are obviously not objecting
25      to learning vital signs on a standard non-abortion patient,
```

```
 1        or even to learning emergency care on that standard

 2        non-abortion patient.  That is not what I was suggesting

 3        would be --

 4              MR. PEIRANO:  I just wanted that to be clear, and

 5        one other clarification, Judge --

 6              THE COURT:  That is the reason why I wanted to go

 7        on the record, because I wanted to clarify everything rather

 8        than have you guys do it back and forth through letters,

 9        which apparently hasn't been very fruitful in the past.

10              MR. PEIRANO:  That's correct, Judge.

11              With respect to whether our position has changed as

12        far as staffing from last week, I do not agree that it has

13        changed measurably, your Honor.

14              Last week what our position was, if we hire four

15        new people to come in, and the census goes down, when the

16        census goes down, Judge, okay, there may not be a need for

17        20 nurses.  Somebody may be transferred.  But if that

18        occurs, Judge, it is all going to be under the position of

19        the collective bargaining agreement.  There is no present

20        intention to do that, but we simply cannot predict the

21        future, your Honor.

22              THE COURT:  Counsel, I think we said that, and I

23        don't want to create problems where there aren't any.  I

24        think Mr. Bowman understands that.  His concern is that as a

25        result of this case, you don't start taking adverse
```

1          employment action against his clients, right?

2                    MR. BOWMAN:  That's basically right, your Honor.

3                    THE COURT:  That's my understanding as well.

4                    If you decide to transfer them later for other

5          reasons --

6                    MR. PEIRANO:  We have no objection to that, your

7          Honor.

8                    MR. BOWMAN:  The question we're raising is you look

9          at the 20 nurses and you say, these new four will do

10         abortions, and these 12 won't, so on that basis, on the

11         basis of that distinction, some of the 12 go out, and the

12         four stay in.  That is where I understood us to be last

13         week, and that's where I understand us not to be this week.

14                   MR. PERIRANO:  Judge, if something like that

15         happens, that they believe is an adverse employment action,

16         as a result of them engaging in protected activity, you are

17         retaining jurisdiction, and it can be brought before the

18         Court.

19                   THE COURT:  I agree, because it's like the

20         definition of an emergency.  We are not going to be sitting

21         here today trying to figure out in the event that they do

22         something, when they do it, is it going to be as a result of

23         this case.  I mean, I am going to retain jurisdiction, so

24         that I can keep an eye on what is going on.

25                   MR. BOWMAN:  We are very glad you are doing that,

```
 1          your Honor.  For ten years there have been no situations

 2          which required my clients' involvement, so if we are going

 3          back to that basic situation, then we have no objection.

 4                    THE COURT:  All right.

 5                    I want to thank both of you for working with the

 6          Court in the amicable resolution of this matter.

 7                    I will issue an order that will set forth the

 8          parameters of the agreement, as I understand it, and as you

 9          indicated that you understand it today, and that will be

10          all.

11                    I think that agreements like this in cases like

12          this do not come about easily because of the emotions

13          involved, and because any time you are dealing with a public

14          entity, it is not as though you are dealing with a single

15          client that you can get approval for things overnight.

16                    There are procedures that entities like the

17          hospital have to go through and responsibilities in their

18          mission statement in terms of what they have to do, and

19          there are also issues with regard to potential medical

20          liability, if you leave things out like emergencies out of

21          the equation, you know, potential medical malpractice claims

22          and all other kinds of claims.

23                    On the other hand, I understand the importance of

24          this issue to your clients, and I wanted to see if there was

25          a way to accommodate it, and I appreciate you talking to
```

1          your clients and getting everyone on the same page.

2                    Mr. Deutsch, I appreciate the reasonableness in

3          which the hospital handled this situation in reaching where

4          we got today.

5                    So with my thanks, this matter is now adjourned.

6                    Thank you.

7                    MR. DEUTSCH:   Thank you, your Honor.

8                    MR. PEIRANO:   Thank you, your Honor.

9                    MR. BOWMAN:   Thank you, your Honor.

10                   THE CLERK:   All rise.

11                   (Court adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25